# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

## NO. 23-1289

_____

### STEPHEN MELISE,

*Plaintiff – Appellee*

v.

### KERRI MCCAUGHEY, in her individual capacity; RHODE ISLAND DEPARTMENT OF CORRECTIONS; WAYNE T. SALISBURY, JR., in his official capacity; ASHBEL T. WALL, in his individual capacity,

*Defendants – Appellants*

_____

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND IN CASE NO. 17-CV-490

### DEFENDANTS-APPELLANTS' OBJECTION TO PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY DISMISSAL AND SUPPORTING MEMORANDUM OF LAW

1

# I. Objection to Motion for Summary Dismissal

Defendants-Appellants—Kerri McCaughey in her individual capacity and Ashbel T. Wall in his individual capacity (collectively, the "Individual Defendants"), together with the Rhode Island Department of Corrections ("DOC") and Wayne T. Salisbury Jr. in his official capacity (collectively, the "State Defendants")—hereby object to Plaintiff-Appellee Stephen Melise's ("Plaintiff") Motion for Summary Dismissal.

The Individual Defendants' right to pursue an interlocutory appeal from the District Court's denial of qualified immunity is well supported by the settled precedents of the Supreme Court and this Court, and Plaintiff's contentions to the contrary are based upon materially incomplete and inaccurate statements of law. By raising and arguing the issue of qualified immunity at the summary judgment stage, the Individual Defendants thereby asserted that, even assuming the version of the evidence most favorable to Plaintiff, they are entitled to qualified immunity as a matter of law. The District Court's subsequent decision to deny qualified immunity is immediately appealable to the extent that it implicates multiple legal errors arising from the application of this Court's qualified immunity jurisprudence to that assumed set of facts. And Plaintiff's suggestion that this Court should abruptly jettison the doctrine of qualified immunity entirely, and dismiss the Individual Defendants' appeal on that basis, is unfounded and should be rejected out of hand.

## II. Memorandum of Law

### A. The District Court's Denial of Qualified Immunity Is Subject to Interlocutory Appeal with Respect to Multiple Issues of Law.

Plaintiff's first argument in favor of summary dismissal, that "no interlocutory appeal to this Court may properly be taken" from the denial of qualified immunity at the summary judgment stage because the District Court found that the case presented disputed issues of fact, relies on an incomplete and inaccurate statement of the governing law. There is no categorical prohibition against interlocutory appeals from the denial of qualified immunity on summary judgment, even when issues of fact exist in the record. *See Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996). Instead, this Court has jurisdiction over such appeals to the extent that they turn on issues of law or the application of law to assumed facts. *See, e.g.*, *Berthiaume v. Caron*, 142 F.3d 12, 14-18 (1st Cir. 1998) (reviewing and reversing denial of qualified immunity on interlocutory appeal from defendants' summary judgment motion after the district court "said that 'factual issues' remained open that were necessary to the decision whether the defendants violated a clearly established right and thus forfeited immunity").

Because qualified immunity "consists of both an immunity from suit and an immunity from damages[,] . . . claims of qualified immunity ought to be resolved at the earliest practicable time." *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017) (citations omitted). Accordingly, a district court's decision to deny a claim for

3

qualified immunity on a motion for summary judgment, "to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see Behrens*, 516 U.S. at 306 ("*Mitchell* clearly establishes that an order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a 'final' judgment subject to immediate appeal."). And because qualified immunity is an immunity from suit, a decision to "defer" ruling on the issue is tantamount to a denial. *See Wyatt v. Cole*, 504 U.S. 158, 166 (1992) (noting that immunities may be "effectively lost if a case is erroneously permitted to go to trial").[1]

The scope of such interlocutory appeals is not unlimited; under *Johnson v. Jones*, 515 U.S. 304 (1995), "determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case[.]" *Behrens*, 516 U.S. at 313 (citing *Johnson*, 515 U.S. at 313-18). But as recognized by this Court in *Berthiaume*, cited *supra*, *Johnson* represents a limited exception to the general rule, and "a defendant who concedes

---

[1] The District Court's citation to *Ringuette v. City of Fall River*, 146 F.3d 1 (1st Cir. 1998), for the proposition that "judges have sometimes deferred a decision" on qualified immunity "until the trial testimony was in or even submitted the factual issues to the jury" is not to the contrary; in that case, the defendants chose not to seek an interlocutory appeal from the district court's denial of qualified immunity. *Ringuette*, 146 F.3d at 6.

*arguendo* the facts found to be disputed is not barred by *Johnson* from taking an interlocutory appeal on a legal claim that the defendant is nevertheless entitled to qualified immunity on facts not controverted." *Berthiaume*, 142 F.3d at 15. Also, the "genuine disputes insulated from immediate review under *Johnson* are those involving facts, such as what happened[;] [q]uestions of law application—for example, whether a set of assumed facts add up to a constitutional violation—are not so insulated and are ordinarily subject to de novo review." *Id.* (citing *Behrens*, 516 U.S. at 312-13). "This is equally true in deciding whether the assumed facts show a violation of 'clearly established' law." *Id.*

In this case, even though the District Court found fact questions that impacted its view of the issue of qualified immunity at the summary judgment stage, its decision not to grant immunity to the Individual Defendants necessarily "turn[ed] on" issues of law as well. *Mitchell*, 472 U.S. at 530; *cf. Behrens*, 516 U.S. at 313 ("Here the District Court's denial of [defendant]'s summary judgment motion necessarily determined that certain conduct attributed to [defendant] (which was controverted) constituted a violation of clearly established law."). Before the District Court, the Individual Defendants argued that—even under the view of the evidence mandated by the summary judgment inquiry—their conduct simply could not support a finding of deliberate indifference under the Eighth Amendment. *See, e.g.*, *Lawless v. Town of Freetown*, 63 F.4th 61, 67 (1st Cir. 2023) ("To assess an

5

official's bid for qualified immunity, we may begin by determining whether the conduct in question violated a federal statutory or constitutional right."). The Individual Defendants also argued that their conduct was not objectively unreasonable given the state of the law when they acted. *See id.* And Defendant-Appellant Wall made the further argument that Plaintiff could not establish supervisory liability under § 1983, thereby entitling Wall to qualified immunity. *See Ramírez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19-23 (1st Cir. 2014).

Each of these assertions represents a legal argument that was necessarily—if implicitly—rejected by the District Court when it declined to grant qualified immunity to the Individual Defendants. *See Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014). Under *Behrens* and this Court's precedent, the Individual Defendants may seek *de novo* review of the District Court's dispositive legal determinations through this interlocutory appeal.[2] *See, e.g.*, *Behrens*, 516 U.S. at 313; *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 13 n.7 (1st Cir. 2000) ("Concluding that a legal right is established is one legal conclusion. Accepting as true for the purposes of summary

---

[2] To the extent that the District Court's decision does not specify the facts on which these determinations rest, this Court "'may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.'" *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)); *see Camilo-Robles v. Hoyos*, 151 F.3d 1, 8 (1st Cir. 1998).

judgment the alleged conduct of the defendants and concluding that their conduct violated the clearly established rights of the plaintiff[] is another legal conclusion.").

That outcome does not change simply because the District Court also recognized the existence of factual disputes that could resolve the Eighth Amendment claims in the Individual Defendants' favor at trial. *See Behrens*, 516 U.S. at 312–13 ("Denial of summary judgment often includes a determination that there are controverted issues of material fact, see Fed. Rule Civ. Proc. 56, and *Johnson* surely does not mean that every such denial of summary judgment is nonappealable."). It is true that the Court's jurisdiction over this interlocutory appeal would not extend to purely factual arguments. *See Snyder v. Gaudet*, 756 F.3d 30, 32 (1st Cir. 2014) (granting appellants qualified immunity as a matter of law and declining to consider their factual arguments); *cf. Lawless*, 63 F.4th at 66 (citation omitted) ("[W]e remain free to examine, on an interlocutory appeal, whether [a] fact makes any cognizable legal difference."). But the Individual Defendants have made no such arguments; at this early stage, they have not had the opportunity to make any substantive arguments whatsoever. Accordingly, the Court should deny Plaintiff's premature and misguided attempt to terminate this appeal.

### B. The Existence of Additional Claims Does Not Defeat this Court's Jurisdiction over the Qualified Immunity Appeals.

Plaintiff also argues that the Individual Defendants' interlocutory appeal on the grounds of qualified immunity is inappropriate because even a successful appeal

would not resolve all the claims at issue in this matter. This argument "was rejected by the Supreme Court in *Behrens*." *Lyons v. Brown*, 158 F.3d 605, 607 (1st Cir. 1998). "There the Court said that an interlocutory appeal lay from a denial of immunity even if granting it would not resolve the entire case." *Id.* (citing *Behrens*, 516 U.S. at 311–13).

As the Supreme Court has explained, the right to qualified immunity "is a right to immunity *from certain claims*, not from litigation in general; when immunity with respect to those claims has been finally denied, appeal must be available, and cannot be foreclosed by the mere addition of other claims to the suit." *Behrens*, 516 U.S. at 312 (emphasis in original). Besides violating the principle "that appealability determinations are made for classes of decisions, not individual orders in specific cases[,]" a contrary rule would have "intolerable" practical consequences. *Id.; see de Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1190 (1st Cir. 1986) (recognizing that a different approach "might invite plaintiffs to include spurious injunctive claims to avoid interlocutory appeal of the immunity question, and thus force the defendant to face the tribulations of a trial from which he may be properly immune").

The error of Plaintiff's view is aptly illustrated by *Suboh v. District Attorney's Office of the Suffolk District*, 298 F.3d 81 (1st Cir. 2002). In that case, the plaintiff brought multiple claims under § 1983 and Massachusetts law against several individual and municipal defendants. *See Suboh*, 298 F.3d at 88-89. After two of

8

the five individual defendants unsuccessfully moved for summary judgment on the § 1983 claims, those defendants appealed from the denials of qualified immunity. *See id.* at 89.

Notwithstanding the existence of additional claims against the other defendants that arose from the same universe of operative facts, this Court properly assumed jurisdiction over the two defendants' denials of qualified immunity. *See id.* at 89-90; *id.* at 97-98 (reversing one denial and affirming the other). The *Suboh* Court was untroubled by the existence of additional, unresolved claims in that case, including analogous state law claims against the same two defendants; in fact, the Court declined the defendants' invitation to exercise pendent appellate jurisdiction over those claims. *See id.* at 97 ("That said, however, we fully expect that the district court, either sua sponte or upon timely request, will reevaluate its earlier rulings in light of this opinion."). Under Plaintiff's erroneous viewpoint, however, the entirety of this Court's decision in *Suboh* rested on a faulty premise: namely, that the existence of the additional claims did not defeat the Court's jurisdiction over the qualified immunity appeals.

As in *Suboh*, the resolution of the Individual Defendants' qualified immunity appeals may well shed light on Plaintiff's other claims, such as his Americans with Disabilities Act ("ADA") claim. *See Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019) (explaining that non-economic damages under the ADA require a showing of

"animus toward the disabled" and assuming, but not deciding, "that a showing of deliberate indifference may suffice to prove this element"); *see also Buchanan v. Maine*, 469 F.3d 158, 171 (1st Cir. 2006) (beginning analysis of state's Eleventh Amendment defense to plaintiff's ADA claim by determining whether plaintiff established an ADA violation).[3] But even if they do not, *Suboh* demonstrates that this Court still has jurisdiction over the Individual Defendants' appeals. Instead of citing controlling authority to the contrary, Plaintiff attempts to analogize his request for summary disposition of this appeal to cases involving rejected stays of discovery proceedings. *See, e.g.*, *Lugo v. Alvarado*, 819 F.2d 5, 8 (1st Cir. 1987) ("When all is said and done what we have before us is a request for review of a pretrial discovery order. Such orders are not appealable before final judgment."). Those citations are distinguishable and cannot overcome the clear precedent of *Behrens*.

---

[3] Plaintiff's focus on the Individual Defendants' qualified immunity appeals also ignores that the State Defendants have also appealed on the basis of Eleventh Amendment immunity. Eleventh Amendment immunity "is jurisdictional and therefore may be raised at any point during litigation, even for the first time on appeal." *Centro de Periodismo Investigativo, Inc. v. Financial Oversight & Mgmt. Bd. for Puerto Rico*, 35 F.4th 1, 9 (1st Cir.), cert. granted, 143 S. Ct. 82 (2022). And the protections afforded by the Eleventh Amendment may be vindicated on an interlocutory basis. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993); *see also Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003) ("Here, the question whether a cause of action for damages exists is inextricably intertwined with the issue of Eleventh Amendment immunity."); *cf.* 15A Wright and Miller, Fed. Prac. & Proc. § 3914.10.7 (3d ed. 2022) ("so long as [interlocutory] appeals are allowed it will be desirable to allow resolution of as many related issues as are fit for immediate decision if immediate decision promises to advance ultimate disposition of the case").

## C. The Individual Defendants Present Substantial Claims for Qualified Immunity.

Plaintiff's next argument is that the Individual Defendants' appeal is a "sham" because they cannot hope to establish their entitlement to qualified immunity. This contention misstates the qualified immunity standard and ignores the multiple arguments raised by the Individual Defendants at the District Court.

According to Plaintiff, the question of whether the Individual Defendants violated clearly established law was definitively settled by *Estelle v. Gamble*, 429 U.S. 97 (1976), which established the standard for Eighth Amendment violations based on deliberate indifference to serious medical needs. *See Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014). But clearly established law "must not be gauged at too high a level of generality; instead, it must be 'particularized' to the facts of the case." *Alfano v. Lynch*, 847 F.3d 71, 76 (1st Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

> "The clearly established inquiry has two related aspects, namely:
> "(1) the relative clarity of the governing law to a reasonable official on the date of the alleged wrong and
> "(2) whether the specific characteristics of the situation confronted by the official would have made it clear to a reasonable official how the governing law applied in the given situation." *Lawless*, 63 F.4th at 67 (cleaned up).

"Together, these aspects of the inquiry must persuade [the Court] that available precedent placed the legal question beyond debate such that any reasonable official would have appreciated the illegality of the conduct in question." *Id.* (citing *City &*

11

*County of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 575 U.S. at 611 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Turning to the relevant precedents, contrary to Plaintiff's position, "even a denial of care may not amount to an Eighth Amendment violation if that decision is based in legitimate concerns regarding prisoner safety and institutional security." *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014). This Court has recognized that:

> "in an ordinary prison, security and administrative concerns may clash with the welfare and comfort of individuals[.] . . . Any professional judgment that *decides* an issue involving conditions of confinement must embrace security and administration, and not merely medical judgments. Thus when it comes to appraising the judgments of the administrators, it does not follow that they are bound to do what the doctors say is best for [plaintiff] even if the doctors are unanimous. The administrators are responsible to the state and to the public for making professional judgments of their own, encompassing institutional concerns as well as individual welfare. Nothing in the Constitution mechanically gives controlling weight to one set of professional judgments." *Cameron v. Tomes*, 990 F.2d 14, 20 (1st Cir. 1993) (emphasis in original).

As a result, "'[w]ide-ranging deference' is accorded to prison administrators 'in the adoption and execution of policies and practices that in their judgement are needed to . . . maintain institutional security.'" *Kosilek*, 774 F.3d at 83 (quoting *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see Snell v. Neville*, 998 F.3d 474,

501 (1st Cir. 2021) ("The DOC defendants also had interests in 'maintaining security and order' within the institution when they determined whether providing the accommodation to [plaintiff] would have been reasonable, and we will defer to such rationales.").

In this case, by failing to accord the appropriate level of deference to the institutional concerns implicated by Plaintiff's requests for a bottom bunk accommodation, the District Court committed legal error on both the first and second prongs of the qualified immunity analysis. The District Court also erred by finding that, even if genuine issues of material fact were resolved in Plaintiff's favor, the Individual Defendants' conduct could support a finding of deliberate indifference. *See Leavitt v. Correctional Medical Services, Inc.*, 645 F.3d 484, 498 (1st Cir. 2011) ("[C]arelessness or inadvertence falls short of the Eighth Amendment standard of deliberate indifference."); *Snell*, 998 F.3d at 497 (cleaned up) ("Deliberate indifference is therefore more than negligence, or the ordinary lack of due care for the prisoner's interests or safety, and occupies a narrow band of conduct that is so inadequate as to shock the conscience."); *cf. Kosilek*, 774 F.3d at 84 ("Subsidiary legal questions, such as whether an actor's conduct amounted to deliberate indifference for purposes of the Eighth Amendment, are likewise reviewed *de novo*.").

Additionally, "even if a constitutional right is clearly established," the Individual Defendants are "entitled to qualified immunity so long as a reasonable official in [their] position could believe, albeit mistakenly, that his [or her] conduct did not violate" that right. *Philip v. Cronin*, 537 F.3d 26, 34 (1st Cir. 2008). The District Court therefore failed to properly consider whether the Individual Defendants' conduct was protected by qualified immunity because it fell "on the 'hazy border' between acceptable and unacceptable behavior." *Suboh*, 298 F.3d at 97. And as the Individual Defendants argued before the District Court, the existence of multiple material differences between Plaintiff's case and *Kiman v. New Hampshire Department of Corrections*, 451 F.3d 274 (1st Cir. 2006), compel a finding that the Individual Defendants' conduct was objectively reasonable "given the state of the law when [they] acted."[4] *Alfano*, 847 F.3d at 75; *see Kiman*, 451 F.3d 281-91 (vacating grant of summary judgment to defendants on ADA claim, brought by inmate with multiple accommodations for "acknowledged . . . serious disability-related needs[,]" that defendants nevertheless failed to "honor [his] bottom bunk pass" even though there was no ladder to the top bunk). As a result, the "added measure of protection" provided by qualified immunity protects the Individual Defendants from liability. *Wilson v. City of Boston*, 421 F.3d 45, 58 (1st Cir. 2005).

---

[4] Most significantly, it is undisputed that the DOC's Medium Security Facility, where Plaintiff was housed, contained ladders reaching from the floor to the top bunks. *See* ECF 110 at ¶ 149; ECF 118 at ¶ 149.

Lastly, even when the evidence is viewed most favorably to Plaintiff, Defendant-Appellant Wall is plainly entitled to qualified immunity under the legal standard for supervisory liability. In addition to an underlying constitutional violation committed by a subordinate, "supervisory liability" under § 1983 requires the supervisor's deliberate indifference to a substantial risk of serious harm and a "strong causal connection between the supervisor's conduct and the constitutional violation." *Ramírez-Lluveras*, 759 F.3d at 19-20. The requirement of causation "contemplates proof that the supervisor's conduct led *inexorably* to the constitutional violation." *Id.* at 19 (citation omitted) (emphasis in original). To "prove causation by showing a 'known history of widespread abuse sufficient to alert a supervisor to ongoing violations[,]'" that proof "must truly show 'widespread' abuse; 'isolated instances of unconstitutional activity ordinarily are insufficient . . . to show deliberate indifference.'" *Id.* at 20 (quoting *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994)).

The District Court clearly erred when it denied summary judgment to Defendant-Appellant Wall on the strength of evidence, "in the form of Minutes from a 2015 Department of Corrections executive staff meeting[,]" that Wall "was aware of other inmates falling from top bunks and that Security was denying medical special needs orders prior to the Plaintiff's fall." ECF 148 at 57:1-7. The District Court erred in its application of the law by improperly assuming that every instance

of "Security . . . denying medical special needs orders" was necessarily a constitutional violation. ECF 148 at 57:5-7; *cf. Kosilek*, 774 F.3d at 83.

Further, as a matter of law, the Minutes cannot support a finding of deliberate indifference. *See* ECF 109-35 at 7 (discussing another inmate's allegation that he fell off a top bunk while his medical slip for a bottom bunk was being reviewed and asking, "Can we shorten the review process?"); *cf. Snell*, 998 F.3d at 497 ("Deliberate indifference . . . occupies a narrow band of conduct that is so inadequate as to shock the conscience."). And cursory references to a handful of incidents cannot establish a "known history of widespread abuse[.]" *Ramírez-Lluveras*, 759 F.3d at 20; *see id.* at 22-23 ("But the record does not show that this complaint was substantiated in any way, nor does it give any information about the contents of the complaint. These instances simply do not rise to the level of a 'substantial' or 'unusually serious' risk . . . that the case law demands."); *cf. Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 49 (1st Cir. 1999) (finding supervisory liability supported where subordinate "was disciplined thirty times for abuse of power, unlawful use of physical force and/or physical assaults" and "six incidents led to recommendations that he be dismissed from the force").

Whatever their ultimate outcomes, the Individual Defendants' appeals present substantive and disputed issues that properly invoke this Court's jurisdiction and should be resolved after full briefing, not through a motion for summary disposition.

*See Fisichelli v. City Known as Town of Methuen*, 884 F.2d 17, 18 (1st Cir. 1989) ("[T]he denial of a substantial claim to qualified immunity can be immediately appealed under [the collateral order] exception.").

### D. The Court Should Decline Plaintiff's Invitation to Overturn the Doctrine of Qualified Immunity through a Motion for Summary Dismissal.

Finally, Plaintiff asks this Court—in the context of a Motion for Summary Dismissal, and on the strength of a law review article—to depart from binding Supreme Court authority and its own settled precedent and overturn the doctrine of qualified immunity under 42 U.S.C. § 1983 in its entirety. This argument is meritless and should be summarily rejected.

This Court is of course bound to follow the decisions of the Supreme Court. *See, e.g.*, *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 271 (1st Cir. 2022), cert. granted, 143 S. Ct. 1053 (2023). Moreover, under the law of the circuit rule, "newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point." *United States v. Wurie*, 867 F.3d 28, 34 (1st Cir. 2017). It is beyond dispute that both the Supreme Court and this Court recognize and apply the doctrine of qualified immunity to § 1983 claims against individual defendants for monetary damages. *See, e.g., City of Tahlequah, Okla. v. Bond*, 142 S. Ct. 9, 12 (2021) (per curiam) ("The officers were thus entitled to qualified immunity."); *Lawless*, 63 F.4th at 67. And because Plaintiff cannot point to authority to the contrary, none of the narrow exceptions to the law of the circuit rule apply. *See*

*United States v. Rodriguez-Pacheco*, 475 F.3d 434, 441-42 (1st Cir. 2007) (explaining that such exceptions require some form of controlling authority).

Instead, Plaintiff cites a law review article that attacks the doctrine of qualified immunity on the basis that such immunity is contradicted by the "Notwithstanding Clause," a portion of Section 1 of the Civil Rights Act of 1871 that was not codified at § 1983. *See Rogers v. Jarrett*, 63 F.4th 971, 979-81 (5th Cir. 2023) (Willett, J., concurring) (discussing Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201 (2023)). Although Plaintiff paints this article as a revelation momentous enough to inspire this Court to summarily overturn its settled precedent, it is unclear how that could be so when "members of the Supreme Court have often noted the Notwithstanding Clause's existence and omission from the U.S. Code." *Id.* at 981 n.11 (Willett, J., concurring) (citing Supreme Court cases from 1939 to 1990). Notably, in *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court quoted the language of Section 1 of the Civil Rights Act of 1871—including the Notwithstanding Clause—and then explained that the "purpose of § 1 of the Civil Rights Act was not to abolish the immunities available at common law, . . . but to insure that federal courts would have jurisdiction of constitutional claims against state officials." *Butz*, 438 U.S. at 502 & nn. 29-30.

More importantly, only the Supreme Court has the power to depart from its holdings. *See Rogers*, 63 F.4th at 981 (Willett, J., concurring) (concluding that only

18

the Supreme Court can decide "what, if anything," the Notwithstanding Clause "means for § 1983 immunity jurisprudence"). Respectfully, the decision is not for this Court to make—and certainly not in this truncated context. *See* Local Rule 27.0(c) (stating that, on a motion for summary disposition, this Court "may dismiss the appeal or other request for relief or affirm and enforce the judgment or order below if the court lacks jurisdiction, or if it shall clearly appear that no substantial question is presented").

### III. Conclusion

For the reasons set forth above, Defendants-Appellants ask that the Court deny the Motion for Summary Dismissal and set this case for full briefing.

Respectfully Submitted,

DEFENDANTS-APPELLANTS,

By,

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Jeff Kidd*
Jeff Kidd (#1205262)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400, ext. 2225
Fax: (401) 222-2995
jkidd@riag.ri.gov

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This document complies with the length limitation of Fed. R. App. P. 27(d)(2)(A) because:

√ **this response to a motion was produced with a computer and contains <u>4,755</u> words.**

2. As required by Fed. R. App. P. 27(d)(1)(E), this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

√ **this response to a motion has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.**

*/s/ Jeff Kidd*
Attorney for Defendants-Appellants
Dated: May 5, 2023

# CERTIFICATE OF SERVICE

I hereby certify that I filed this Objection with the Clerk of the United States Court of Appeals for the First Circuit via the CM/ECF system this 5th day of May, 2023, and that the same is available for viewing and downloading by counsel of record who are registered as an ECF filer and will be served by the CM/ECF system.

*/s/ Jeff Kidd*